**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

```
_____
KOLE AKINOLA,                  :
                               :   Civil Action No. 09-3415 (WJM)
          Petitioner,          :
                               :
     v.                        :        O P I N I O N
                               :
SCOTT WEBER, et al.,           :
                               :
          Respondents.         :
_____:
```

**APPEARANCES:**

    KOLE AKINOLA, Petitioner, Pro Se
    # 349534
    Essex County Correctional Facility
    354 Doremus Avenue
    Newark, New Jersey 07105

    RALPH J. MARRA, JR., Acting United States Attorney
    ALLAN B. K. URGENT, Assistant U.S. Attorney
    970 Broad Street, Suite 700
    Newark, New Jersey  07102
    Attorneys for Respondents

**MARTINI, District Judge**

Petitioner, Kole Akinola ("Akinola"), an immigration detainee presently detained at the Essex County Correctional Facility in Newark, New Jersey, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention as unconstitutional. Akinola names Scott Weber, Director, the United States Department of Homeland

Security ("DHS"),[1] Immigration and Customs Enforcement, ("ICE") Office of Detention and Removal Operations ("DRO"); Roy Hendricks, Warden of the Essex County Correctional Facility; Nnamdi Aneke, Supervisory Deport Officer in Charge, Newark New Jersey Processing Center; "Margist", ICE, DRO Field Operations Officer; William Burnett, Assigned Deport Officer; and Janet Napolitano, DHS Secretary, as party respondents (hereinafter referred to as "the Government") in this action.

On September 3, 2009, the Government submitted a response to the petition, together with the relevant administrative record. Akinola filed a traverse or reply on September 15, 2009.  On October 26, 2009, respondents informed the Court as to the decision of the Board of Immigration Appeals ("BIA"), dated October 16, 2009, which remanded the matter to the Immigration Judge for further proceedings.

Akinola wrote to this Court on four separate occasions: on October 14, 2009 (Docket entry no. 9); November 5, 2009, (Docket

---

[1] Effective March 1, 2003, the Immigration and Naturalization Service ("INS") ceased to exist as an agency of the Department of Justice, and its functions were transferred to the Department of Homeland Security ("DHS").  See Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002).  The Bureau of Immigration and Customs Enforcement ("ICE") of the DHS is responsible for the interior investigation and enforcement functions that formerly were performed by the INS.

entry no. 11); November 2, 2009 (Docket entry no. 12);[2] and December 10, 2009 (Docket entry no. 14). Akinola's brother also wrote to this Court on December 1, 2009 (Docket entry no. 13). All of these submissions to the Court seek Akinola's release from detention, challenge the Government's basis of mandatory detention under 8 U.S.C. § 1226(c), and contend that his continued, indefinite detention violates due process.

This Court has reviewed the written submissions of the parties, and for the reasons stated below, the Court finds it necessary to schedule a hearing on the petition.

### I.   BACKGROUND

Petitioner Akinola is a 35-year-old male, native and citizen of Nigeria. He last entered the United States in October 1994, as an immigrant without inspection. Akinola had been convicted of several crimes while in the United States, as follows:

> April 14, 2000 - New Jersey state court conviction for possession with intent to distribute cocaine within 1,000 feet of a school - sentenced to five years in prison
>
> April 14, 2000 - New Jersey state court conviction for robbery - sentenced to ten years in prison

---

[2] This letter actually is a copy of Akinola's submission to the IJ, dated November 2, 2009, regarding evidence of the manner of enforcement of Decree No. 33 (detention and torture of convicted drug offenders deported to Nigeria) to persons such as petitioner. The Board of Immigration Appeals ("BIA") had remanded the matter for further proceedings on this evidence with respect to Akinola's claim for deferral of removal under the Convention Against Torture.

Akinola also was convicted of third degree theft by deception and third degree possession of a controlled dangerous substance.  These convictions are set forth in the attachments to Akinola's habeas petition.

A Notice to Appear in Removal Proceedings was issued to Akinola on August 25, 2008.  The Government states that removal proceedings were delayed to allow Akinola time to find an attorney to represent him.  The proceedings were delayed further to give Akinola's attorney to search for Akinola's visa, which Akinola had insisted he had upon arrival in the United States. Akinola later admitted that he had arrived in the United States on a fraudulent passport.

In his traverse, Akinola disputes that the delays in his removal proceedings were solely attributable to him.  Indeed, he states that he received several one-week continuances of his removal proceedings, but the ICE also had requested continuances of two weeks, and one continuance that lasted for three months. In addition, Akinola states that postponements were due to scheduling issues with respect to the IJ's calendar.  Further, Akinola's attorney asked that the case be assigned expeditiously. Finally, Akinola disputes that he misled the Government with respect to his visa, since immigration documents dating back to 1997 show that Akinola admitted that he entered the United States "without inspection".

Eventually, removal proceedings were held on May 20, 2009. At that time, an Immigration Judge ("IJ") denied Akinola's claim for asylum, pursuant to the Immigration and Naturalization Act ("INA") §§ 101(a)(43)(B) and 208(b)(2)(A)(ii); and his request for a withholding of removal, pursuant to INA § 241(b)(3). Akinola's conviction for an aggravated felony also barred him from withholding of removal under the Convention Against Torture ("CAT").  See 8 C.F.R. § 208.16(b)(2).  (IJ Decision, Respondents' Exhibit B).  However, the IJ did grant Akinola's application for a deferral of removal to Nigeria, concluding that Akinola had sustained his burden in establishing that torture was 'endemic' in Nigerian detention and that Akinola was more likely than not to be placed in Nigerian detention under Decree 33 because of his drug trafficking conviction in the United States. (IJ Decision at pp. 16-18, Resp. Ex. B).

Both the Government and petitioner reserved their rights to appeal from the IJ's decision.  However, Akinola did not appeal from the IJ's decision.  Akinola contends that the removal order became final on June 19, 2009, thirty days from the date of the IJ's decision (May 20, 2009), upon Akinola's failure to file a timely appeal.  See 8 C.F.R. §§ 241.1, 1241.1(c) and 1003.38(b).

The Government appealed on the narrow issue as to the grant of a deferral of removal, arguing that the evidence in the record does not establish that Akinola will be placed in detention under

Decree 33.  Specifically, the Government relied on the evidence it submitted during the removal proceedings, namely, a Country of Origin Information Report for Nigeria from the United Kingdom, dated December 5, 2008, which asserts that Decree 33 has not resulted in prosecutions since 2001.  (IJ Decision at Pg. 17, resp. Ex. B).

Akinola states that after the IJ's decision, his case was assigned to Deportation Officer ("DO") William Burnett.  Akinola met with Burnett several weeks after the IJ's decision was issued to complete applications for acceptance to three other countries for removal where he would be safe from torture.  At that time, Akinola gave Burnett a copy of a DHS-ICE Memorandum dated February 9, 2004, from Michael J. Garcia, Assistant Secretary, to Anthony Tangeman, Deputy Executive Associate Commissioner, Office of Detention and Removal ("Garcia Memo", Petitioner's Appendix ("PA") 1).  Akinola states that the Garcia Memo sets forth ICE policy to release aliens who have been granted protection under the Convention Against Torture by an IJ where the ICE has filed an appeal from the decision and it is pending before the BIA.

Akinola alleges that Burnett told him he may make an application for an alternative to detention, such as supervised release with conditions.  However, on June 9, 2009, Burnett informed Akinola that because the ICE was appealing the IJ's decision, Akinola is considered to be in removal proceedings and

subject to mandatory detention. The next day, June 10, 2009, Akinola's case was reassigned from DO Burnett to DO Salvaria. That same day, Akinola submitted to the ICE completed requests for acceptance addressed to the consulates of Spain, Japan and the United Kingdom ("UK"). Akinola also submitted an application for an alternative to detention, such as an electronic bracelet or supervised release.

Akinola complains that there has been no individualized determination concerning his detention, and that all of his requests for supervised release have been ignored, in violation of his right to due process. Akinola also states that he has fully cooperated with the ICE in their efforts to remove him to alternate country. Accordingly, he filed this habeas petition on or about July 13, 2009.

The BIA issued a decision on the Government's appeal on October 16, 2009. (Docket entry no. 10-2). Respondent forwarded a copy of the BIA decision to this Court on October 26, 2009. (Docket entry no. 10). The BIA sustained the Government's appeal and remanded the matter to the IJ for further proceedings. Specifically, the BIA found that the evidence supplied by Akinola during the removal proceedings and the 2008 Department of States report on country conditions were insufficient. Namely, the BIA stated that the record must contain some current evidence regarding the manner of enforcement of the provisions of Decree

7

33 on individuals similarly situated to Akinola in order to uphold the IJ's decision.

On December 10, 2009, this Court received Akinola's motion for immediate release from detention. (Docket entry no. 14). In his motion, Akinola states that his remanded removal proceedings were continued on November 24, 2009 and is now scheduled for a merits hearing on January 25, 2010. By that time, Akinola states that he will have been in detention for more than seventeen (17) months.

The Government continues to assert that Akinola's detention is governed by § 1226(c) because the IJ's decision is not final.

## II.  ANALYSIS

### A.  Jurisdiction

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3). That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Here, this Court has subject matter jurisdiction over this petition because petitioner is being detained within its jurisdiction at the time he filed his petition, and because petitioner asserts that his indefinite detention is not statutorily authorized and is constitutionally impermissible because it violates due process.

B.  <u>Standard of Review</u>

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Lewis v. Attorney General</u>, 878 F.2d 714, 721-22 (3d Cir. 1989); <u>United States v. Brierley</u>, 414 F.2d 552, 555 (3d Cir. 1969), <u>cert. denied</u>, 399 U.S. 912 (1970).

C.  <u>Relevant Statutes</u>

The Government contends that Akinola is being held pursuant to the mandatory detention statute under 8 U.S.C. § 1226(c), or § 236(c) of the INA.  This statute provides for the mandatory detention, without bond while removal proceedings are pending, of those aliens who committed certain enumerated categories of criminal and other offenses.  The statute reads, in relevant part:

> (c) Detention of criminal aliens
>
> (1) Custody
>
> The Attorney General shall take into custody any alien who-
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,

9

>    (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
>
>    (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
>    when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c).

Under the mandatory detention statute, immigration courts are without jurisdiction to redetermine the conditions of custody of an alien in removal proceedings subject to 8 U.S.C. § 1226(c)(1), such as by setting bond.  8 C.F.R. § 1003.19(h)(2)(i)(D)(2008).  An immigration may request a <u>Joseph</u> hearing to determine if he is properly included in the mandatory custody provision, pursuant to <u>Matter of Jospeh</u>, 22 I.& N. Dec. 299 (BIA 1999) and 8 C.F.R. § 1003.19(h)(2)(ii).

D.   <u>The Issue of Mandatory Detention</u>

The key issue here is whether Akinola is subject to mandatory detention because his removal proceedings are still pending.  Akinola contends that mandatory detention under 8 U.S.C. § 1226(c) is not applicable because his removal order is final under 8 C.F.R. § 1241.1(c).  Akinola did not appeal the removal order, which was issued on or about May 20, 2009, and the time to file an appeal from that removal order has now passed.

On the other hand, the Government argues that Akinola's detention is mandatory under § 1226(c), because the IJ's decision concerning the deferral of removal is not final.  The Government admittedly did not appeal from the final removal order, but instead appealed the IJ's decision to grant Akinola a deferral of removal.  The BIA sustained the Government's appeal on October 16, 2009, and remanded the matter to the IJ for further proceedings to include evidence concerning the enforcement of Decree 33 in Nigeria to support Akinola's eligibility for deferral of removal.  The remanded proceeding is now scheduled for January 25, 2010.  Therefore, it is plain that removal proceedings are still pending, even though the actual removal order is not at issue.  Accordingly, this Court finds that Akinola was subject to mandatory detention under 8 U.S.C. § 1226(c).

The next question the Court must consider, however, is whether Akinola has established that he is being subjected to an unreasonably prolonged detention under § 1226(c) in violation of his right to due process.  The Attorney General may release an alien detained under § 1226(c) only for narrow reasons not implicated here.  See 8 U.S.C. § 1226(c)(2).[3]  Further, an alien

---

[3] Section 1226(c)(2) reads:  The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18 that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an

detained under § 1226(c) is not afforded a bond hearing before an IJ, whereas a noncriminal alien, who is detained under § 1226(a), is given such a hearing.  See 8 U.S.C. § 1226(a), (c).  Consequently, Akinola, as an alien detained under § 1226(c), does not have an opportunity to show that he does not pose a danger to the community or a flight risk to be released on bond.  See § 1226(c).

The United States Supreme Court held in Demore v. Kim, 538 U.S. 510 (2003), that mandatory detention under 8 U.S.C. § 1226(c) during removal proceedings does not violate the protections guaranteed under the Constitution.  In Demore, a lawful permanent resident filed a habeas petition challenging the no-bail provision of § 1226(c), pursuant to which he had been held for six months during the pendency of removal proceedings against him.  The Supreme Court held that detention of lawful permanent residents during removal proceedings is constitutionally permissible, even when there has been no finding that they are unlikely to appear for their deportation proceedings.  Id. at 523-24.  In doing so, the Court noted that

---

investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding.  A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

detention pending removal "serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing their chance that, if ordered removed, the aliens will be successfully removed." Id. at 528.

However, the Supreme Court's holding in Demore, as noted in Madrane v. Hogan, 520 F. Supp.2d 654 (M.D. Pa. 2007), is "narrow[ ] ... grounded in repeated reference" to the brevity of removal proceedings. Id. at 664. In Demore, the Supreme Court recognized that § 1226(c) was intended only to "govern [ ] detention of deportable criminal aliens pending their removal proceedings," which the Court stressed typically "lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the alien chooses to appeal" his removal order to the BIA. Demore, 538 U.S. at 527-28 (emphasis in original).

In the instant case, Akinola admittedly did not prevail on his CAT claim as the BIA has remanded the issue on the deferral of removal to the IJ for further proceedings concerning evidence of enforcement of Decree 33 in Nigeria. This hearing has been rescheduled for January 25, 2010. But it is equally clear that Akinola's removal proceedings, post-removal order since May 20, 2009, has been prolonged for more than eight months, and continues to run because the Government chose to appeal a

13

deferral of removal.  Akinola has not impeded his removal proceedings, and in fact, has tried to cooperate in effecting his removal to countries other than his native Nigeria.  This Court is mindful that the appellate process concerning the deferral of removal was undertaken by the Government and not Akinola, and any further appellate proceedings with regard to the remand proceedings also could take a significant amount of time, time beyond the seventeen (17) months Akinola has already spent in ICE custody to date.  See Madrane, 520 F. Supp.2d at 667 (expressing concern that "the administrative and appellate process that has yet to be exhausted may be considerably time-consuming").  In light of these facts and the forecast of additional future appeals or proceedings that could cause Akinola to be detained for many months in addition to the nearly two years he has already been held in custody, the Court is not inclined to accept Respondents' argument in favor of continued detention based solely on the mandatory language of § 1226(c), particularly where the Supreme Court in Demore did not expressly contemplate the constitutionality of such prolonged detention, and where Respondents have offered no other compelling justification or authority for such prolonged detention of Akinola.

Accordingly, the Court finds it appropriate and necessary to hold a hearing on Akinola's habeas petition.  At the time of the hearing, Respondents shall be prepared to provide justification

for Akinola's continued detention, including, but not limited to, evidence demonstrating his potential risk of flight and potential danger to the community in the event he is ordered released.

## CONCLUSION

For the reasons set forth above, the Court will hold a hearing on the petition for habeas relief under 28 U.S.C. § 2241, and the Respondents shall be directed to submit justification for Akinola's continued detention, including, but not limited to, evidence demonstrating his potential risk of flight and potential danger to the community in the event he is ordered released under supervision pending removal. An appropriate order follows.

S/William J. Martini

WILLIAM J. MARTINI
United States District Judge

Dated: January 26, 2010